## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| DAVID GRAHAM, ) | |
| ) | Civil Action Number: 0:16-cv-01153-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| NATIONAL UNION FIRE INSURANCE ) | **ORDER AND OPINION** |
| COMPANY OF PITTSBURGH, PA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff David Graham ("Plaintiff") is suing Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania, ("Defendant") for breach of insurance policy, bad faith, declaratory judgment, and attorney's fees. ECF No. 1-1. This matter is before the court on Plaintiff's motion to compel (ECF No. 15) pursuant to Federal Rule of Civil Procedure 37(a).

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant insured the vehicle driven by Plaintiff through Plaintiff's employer. The insurance policy provided up to $100,000 coverage for accidents involving uninsured motorists ("UM"). ECF No.1-1 at ¶ 9.[1] The insurance policy does not cover underinsured motorist ("UIM") accidents. *See* ECF No. 17-2, 17-6. UM coverage may apply in this case because the at-fault driver had liability insurance for only up to $15,000, which is below the legal limit required by South Carolina and North Carolina.[2] *Id.*, *see* ECF No. 17 at 4.

---

[1] "Uninsured motorist coverage protects an insured for losses caused by a negligent driver who has no auto liability insurance, while underinsured motorist coverage provides compensation to an insured who suffered damages as a result of a negligent motorist whose insurance is insufficient to pay damages." 7A Am. Jur. 2d Automobile Insurance § 467 (2016).

[2] S.C. Code Ann. § 38-77-140 requires minimum insurance of "(1) twenty-five thousand dollars because of bodily injury to one person in any one accident, and subject to the limit for one person; (2) fifty thousand dollars because of bodily injury to two or more persons in any one

1

Plaintiff alleges that on November 29, 2010, Plaintiff was driving his employer's vehicle when he was struck by a Mandy Harmon ("at-fault driver"). ECF No. 1-1 at ¶¶ 4, 7. Plaintiff alleges that he began contacting Defendant in September 2013 to set up a claim. ECF No. 24 at 2. Plaintiff allegedly followed up on October 4, 2013, requesting information on whether Defendant provided coverage for the vehicle at the time of the accident. ECF No. 24-1. Plaintiff alleges Defendant failed to respond, and Plaintiff followed up on November 13, 2013, again with no response. ECF No. 24-2. Plaintiff filed suit against the at-fault driver on November 14, 2013 ("underlying state lawsuit"). ECF No. 1-1 at ¶ 5. On November 21, 2013, Plaintiff faxed a letter requesting Defendant state whether it provided coverage for the vehicle and providing a courtesy copy of the lawsuit against the at-fault driver. ECF No. 24-3. On February 14, 2014, Plaintiff again contacted Defendant, this time by certified mail, and informed Defendant that Plaintiff "will enforce any judgment received against AIG/National Union Fire as it relates to the [at-fault driver] case" and stated that "if [Defendant] would like to appear and defend" then to provide information on whether Defendant provided underinsured motorist ("UIM") coverage. ECF No. 24-4. By letter dated March 5, 2014, Defendant responded that it did not provide UIM coverage under the policy. ECF No. 16-2. However, Defendant allegedly provided the policy covering Plaintiff's employer's vehicles in South Carolina, whereas the vehicle Plaintiff had been driving was registered in North Carolina. ECF Nos. 15 at 1; 15-1.[3]

Plaintiff attempted to seek coverage again, and was denied a second time by letter dated March 5, 2015. Defendant stated that UIM coverage was rejected by Plaintiff's employer;

---

accident; and (3) twenty-five thousand dollars because of injury to or destruction of property of others in any one accident."

[3] Defendant asserts that while registered in North Carolina, the vehicle is under the South Carolina policy. ECF No. 17-8 at 3-4.

therefore, Defendant did not provide coverage. ECF No. 15-2. However, Defendant cited an incorrect policy number that does not provide coverage for either uninsured or underinsured motorists. *See* ECF No. 15-4 at 1-2 (applicable policy number is 397-66-87); ECF No. 17 at 4 (providing information on policy number 397-66-88 but stating 397-66-87 may apply in the case). Under the allegedly correct policy number (397-66-87), Defendant provided UM coverage but not UIM coverage. ECF No. 15-3.

On November 30, 2016, a hearing convened before this court on Defendant's motion for summary judgment. Defendant moved for summary judgment pursuant to South Carolina Code Annotated § 38-77-150(B), which states that no action may be brought under an uninsured motorist provision "unless copies of the pleadings in the action establishing liability are served . . . upon the insurer writing the uninsured motorist provision." The court denied summary judgment. ECF No. 30. The court held that given the multiple denials and alleged failures to respond to Plaintiff's inquiries, there was a genuine issue of material fact whether Plaintiff had a reasonable basis to serve Defendant in the underlying state lawsuit.

On September 23, 2016, the court stayed discovery pursuant to a joint motion to stay. ECF No. 23. Prior to the grant of stay, Defendant produced some documents and provided answers to Plaintiff's interrogatories on June 27, 2016. ECF Nos. 15-4, 15-5, 15-6. Defendant contends that it is not required to disclose any documents created after March 5, 2014, the date of the first denial. *See id.* On August 17, 2016, Plaintiff stated, through email, its disagreement with Defendant's contention that Defendant was not required to disclose any documents created after March 5, 2014. ECF No. 17-10 at 2. On August 18, 2016, Plaintiff moved to compel additional responses to (1) Plaintiff's requests for production numbers 4, 5, 7, and 8, and (2) responses to Plaintiff's interrogatories 7 and 8. Defendant opposes Plaintiff's motion to compel on grounds of

3

relevance, attorney-client privilege, and work-product doctrine. ECF No. 17. Currently before the court is Plaintiff's motion to compel production of certain documents withheld by Defendant on grounds of relevance, attorney-client privilege, and work-product doctrine. ECF No. 15.

For the reasons stated herein, Plaintiff's motion to compel is granted in part as to request for production number 4, 5, and 8, denied as moot as to number 7,[4] and granted as to interrogatories 7 and 8.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Courts are to construe broadly rules enabling discovery. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). If a party fails to answer an interrogatory submitted pursuant to Federal Rule of Civil Procedure 33 or fails to produce a requested document, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3).

## III.    ANALYSIS

A. <u>Documents Withheld on Relevance Grounds</u>

1. *Requests for Production 4, 5, and 8*

In request for production 4, Plaintiff requested the entire claim file related to the litigation; request for production 5 requested all emails sent or received regarding coverage; and request for production 8 requested all written opinions and/or analysis regarding coverage. ECF

---

[4] Request of production 7 requested Defendant produce the UIM/UM claims handling guidelines, Defendant produced the UIM/UM claims handling guidelines after Plaintiff moved to compel. ECF No. 17 at 13.

4

No. 15-6. Defendant declined to produce the requested documents after the date of the first denial, stating that the documents are irrelevant to a claim of bad faith.

To prove a claim of bad faith in a first-party benefits case, the plaintiff must show "(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured." *Univ. Med. Assocs. of Med. Univ. of S.C. v. UnumProvident Corp.*, 335 F. Supp. 2d 702, 710 (D.S.C. 2004) (citing *Crossley v. State Farm Mutual Auto. Ins. Co.*, 415 S.E.2d 393, 396-97 (1992)). In *Howard v. State Farm Mutual Automobile Insurance Company*, the South Carolina Supreme Court held that an insurance company may only be held liable for bad faith "by the evidence before it at the time it denied the claim or if the insurance company did not specifically deny the claim by the evidence it had before it at the time the suit was filed." 450 S.E.2d 582, 584 (S.C. 1994).

Defendant argues that, under *Howard*, any evidence after the first denial is irrelevant to proving bad faith; therefore, Defendant does not have to produce any documents after the date of the first denial, March 5, 2014. ECF No. 17 at 5-8. Given the multiple denials and the statement that UM coverage may apply to the claim, the court finds that there may be discoverable evidence after the first denial. While discovery may be limited where it is out of proportion to the needs of the case, Defendant has not argued the request is out of proportion to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, Defendant is ordered to produce discovery responsive to requests for production 4, 5, and 8 until the date Plaintiff commenced litigation, February 12, 2016.

2. *Interrogatories 7 and 8*

Plaintiff's interrogatories 7 and 8 query "whether a reserve was set for the underlying claim and if so what was the amount of the reserve, the date the reserve was set[,] and if any changes in the reserve were made." ECF No. 15 at 11. The relevance of reserve information depends on the facts and circumstances of each case. *See McCray v. Allstate Ins. Co.*, No. 14-2623, 2015 WL 6408048, at *2 (D.S.C. Oct. 22, 2015) (ordering disclosure of reserve information in bad faith case). An insurance company creates a "reserve" based on how much money it believes litigation will cost and the potential monetary liability. Generally, reserve information is relevant in third-party bad faith claims as probative on the issue of whether the insurance company believed it was liable. *McCray*, 2015 WL 6408048 at *5. However, in a first-party bad faith claim, the insurer's good faith is determined "(1) by the manner and depth of its investigation, and (2) the determination of whether there was a good faith factual or legal question as to whether the loss was covered." *Id.* Accordingly, the amount of potential liability, as shown by reserve information, is generally irrelevant in a first-party bad faith claim. *Imperial Textiles Supplies Inc. v. Hartford Fire Ins. Co.*, No. 09-3103, 2011 WL 1743751 at *4 (D.S.C. May 5, 2011). However, given the issue with the multiple denials and the alleged concession that coverage might apply, information on when or if a reserve was created may demonstrate Defendant's manner and depth of its initial investigations. Defendant must answer interrogatories 7 and 8 regarding whether a reserve exists, when the reserve was created, and any date(s) when the reserve was modified.

B. <u>Documents Withheld Based on Classification as Attorney-Client Privilege</u>

Defendant objected to requests for production 4, 5, and 8 on the basis that the information was protected by attorney-client privilege. In diversity cases, the availability of attorney-client

6

privilege is governed by the law of the forum state. *See* Fed. R. Evid. 501. In South Carolina, attorney-client privilege covers:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Tobaccoville USA, Inc. v. McMaster*, 692 S.E.2d 526, 530 (S.C. 2010) (citing *State v. Doster*, 284 S.E.2d 218, 219-20 (1981)). Defendant asserts as an affirmative defense that it "did not act unreasonably or in bad-faith." ECF No. 8 at 4. The party claiming attorney-client privilege must demonstrate that it did not implicitly or explicitly waive privilege. *East Bridge Lofts*, ECF No. 15-8 at 6. Under South Carolina law, there is no per se waiver where there are allegations of bad faith. *City of Myrtle Beach v. United Nat'l Ins. Co.*, No. 08-1183, 2010 WL 3420044, at *5 (D.S.C. Aug. 27, 2010). "However, if a defendant voluntarily injects an issue in the case, whether legal or factual, the insurer voluntarily waives, explicitly or impliedly, the attorney-client privilege." *Id.* A defendant may implicitly waive attorney-client privilege if the defendant seeks to establish its mental state by asserting it investigated the law and reached a well-founded belief that the law permitted its action. *Id.* Accordingly, a defendant waives privilege as necessary to determine whether its investigation and belief were reasonable. *Id.*

The court finds that Defendant implicitly waived attorney-client privilege by asserting the affirmative defense. *See id.*; *East Bridge Lofts Property Owners et al. v. Crum & Forster Specialty Ins. Co.*, No. 14-2567 at 7 (D.S.C. June 3, 2015). To the extent Defendant relied on its attorneys' investigation to determine the claim denials, Defendant has waived attorney-client privilege and must provide the information Defendant relied upon in making its decision to deny the claims.

7

C. <u>Documents Withheld Based on Work-Product Doctrine</u>

Defendant objected to requests for production 4, 5, and 8 on the basis that the information was protected by the work-product doctrine. Federal Rule of Civil Procedure 26(b)(3) states that documents prepared "in anticipation of litigation" are generally protected from discovery. These documents may be prepared by the party's "attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A). Work-product doctrine only protects documents where there is a "prospect of litigation," *i.e.*, "when a preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation" and the document was prepared because of the litigation. *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992). Documents prepared in the ordinary course of business are not protected by the work-product doctrine. *Id.* A claims file generally is not prepared in anticipation of litigation but in the ordinary course of business to determine if the insurer needs to provide coverage. *See East Bridge Lofts*, No. 14-2567 at 8.

Defendant hired its attorney in October 2014 in connection with the underlying state law case. Accordingly, documents may be protected by work-product doctrine after October 2014 as there was a clear prospect of litigation. Documents prepared before October 2014 are not protected under the work-product doctrine.

After determining work-product doctrine applies, the court must determine whether the documents are nevertheless discoverable. There are two types of work-product privilege: (1) work-product that is "absolutely immune" from discovery and (2) work-product that is "qualifiedly immune." *Nat'l Union Fire Ins. Co.*, 967 F.2d at 984. Work-product that is "absolutely immune" are the attorney's "mental impressions, conclusions, opinions, or legal theories . . . concerning the litigation." *Id.* "Qualifiedly immune" work-product may be

discoverable where the party seeking it demonstrates "substantial need for the materials . . . and cannot, without undue hardship obtain their substantial equivalent by any other means." Fed. R. Civ. P. 26(b)(3). To the extent that the work-product relates to Defendant's belief in the merits of Plaintiff's litigation and Defendant's litigation strategies, work-product "absolute immunity" applies and protects the documents from discovery. However, to the extent the documents related to Defendant's thoughts and knowledge about whether coverage applies, these documents are subject to "qualified immunity." As Plaintiff has no other way to attain such information and the information is relevant to proving bad faith, the work-product doctrine does not apply and Defendant must disclose the documents.

## IV.     CONCLUSION

Plaintiff's motion to compel is **GRANTED IN PART** as to request for production number 4, 5, and 8, **DENIED AS MOOT** as to request for production number 7, and **GRANTED** as to interrogatories 7 and 8. Defendant will produce a privilege log for documents it believes to be covered by attorney-client privilege or work-product doctrine, not to be inconsistent with the orders provided herein.

**IT IS SO ORDERED.**

                                                                 s/ Margaret B. Seymour
                                                                Honorable Margaret B. Seymour
                                                                Senior United States District Judge

January 12, 2017
Columbia, South Carolina

9